**Dean E. Johnson  [CSBN 114065]**
**600 Allerton Street, Suite 202**
**Redwood City, CA  94063**
**Phone:  (650) 216-7155**
**Fax:  (650) 216-7355**
Attorney for Defendant
BENJAMIN ROBINSON

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> BENJAMIN ROBINSON, <br><br> Defendant. | No. CR-07-00596 JF <br><br> **NOTICE OF MOTION AND MOTION FOR DISCOVERY OF GRAND JURY TRANSCRIPTS; MEMORANDUM OF POINTS AND AUTHORITIES** <br><br> Date:  December 19, 2007 <br> Time:  9:00 AM |

**TO:   SCOTT N. SCHOOLS, UNITED STATES ATTORNEY, AND SUSAN KNIGHT, ASSISTANT UNITED STATES ATTORNEY:**

**PLEASE TAKE NOTICE** that on the above noted date, Defendant Benjamin Robinson, through counsel, will request that the Court enter an order directing the United States Attorney to produce for inspection by Defendant Robinson the transcripts from the grand jury proceedings involved in the investigation and indictment of this case.

This motion is based upon this notice of motion, the attached memorandum of points and authorities and declaration of counsel, and all other matters and information that may come to the Court's attention at the hearing on this motion.

Dated:  December 4, 2007                                    /S/_____
                                                                                Dean E. Johnson
                                                                                Attorney for Defendant

-1-

# MEMORANDUM OF POINTS AND AUTHORITIES
## INTRODUCTION

Pursuant to Federal Rules of Criminal Procedure 6(e), 12(i), 16(a)(1)(A), and 26.2, *Giglio v. United States*, 405 U.S. 150, 92 S.Ct. 763 (1972) and *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194 (1963), Defendant Robinson respectfully moves this Court for an order directing the United States Attorney to produce for inspection the transcribed testimony of each witness who testified before the grand jury concerning the events alleged in the indictment, along with grand jury transcripts containing any statements made by the Assistant United States Attorney(s) and case agent(s) appearing before the grand jury, including but not limited to comments regarding exculpatory evidence or the lack thereof.

The production of the grand jury transcript is necessary because it appears from the allegations contained in the indictment that grounds exist for a motion to set aside indictment.

## FACTUAL AND PROCEDURAL BACKGROUND
## STATEMENT OF FACTS

Benjamin Robinson was a special agent for the Office of Export Enforcement (OEE).[1] OEE is charged with the investigation of violations of export regulations, particularly those regulations that relate to "dual use technologies." "Dual use technologies" are technologies that have both civilian and military applications. As a special agent for OEE, Mr. Robinson had "top secret" clearance.

In November of 2002, Mr. Robinson had a chance encounter in his office building with "S.S." Over the next few months, Mr. Robinson and S.S. developed a social relationship.

Eventually, S.S. revealed that she was from Iran. She told Mr. Robinson that she was a United States citizen, that her surname was her married name and that she was estranged from her husband.

In January of 2003, S.S. invited Mr. Robinson to her home, where the couple had sexual intercourse for the first time.

On February 14, 2003, the relationship took a bizarre turn. S.S informed Mr. Robinson that she was pregnant and that he was the father. A month later, S.S. announced that she intended to return to Iran to have the baby. S.S. then demanded that Mr. Robinson provide her with copies of his passport, birth certificate, social security number and a signed document containing Mr. Robinson's notarized signature, allegedly to assist her in taking the child out of Iran.

---

[1] A detailed statement of the facts is provided in the Declaration of Counsel that accompanies this motion. This summary is provided for the Court's convenience.

-2-

Mr. Robinson immediately became suspicious that S.S. intended to use his identifying information for some illegal purpose, either immigration fraud, export or import violations, or even terrorism.

Mr. Robinson, who was authorized to initiate investigations "on suspicion" began to query Smith's name in the Treasury Enforcement Communication System (TECS). TECS allows agents like Mr. Robinson to track an individual's entry into, and departure from, the United States. Mr. Robinson used TECS to determine whether S.S. was traveling to and from Iran.

S.S.'s conduct over the next few months only served to heighten Mr. Robinson's fears. S.S. claimed to have suffered a miscarriage. She then said that she had not had a miscarriage. She claimed to have had an abortion. She then claimed to still be pregnant, and said that she would travel to Iran to have the baby. Mr. Robinson contacted the Department of State Fraud Unit, but was told that there was nothing that could be done unless S.S. was "caught in the act."

S.S. began to harass of Mr. Robinson. Every day, she left numerous messages on Mr. Robinson's cell phone demanding his identifying information. The problem became so severe that Mr. Robinson obtained authorization from his supervisor to change his work cell phone number.

S.S then began to leave messages on Mr. Robinson's office phone, often leaving as many as many as 10 messages per day. The calls originated from both the United States and Iran. They were recorded and copies of the messages are in the government's possession.

At one point, S.S. threatened in her phone message to "bring [Mr. Robinson] on [sic] his knees" and to make Mr. Robinson's life "hell." For the first and only time Mr. Robinson reacted angrily to S.S's abuse, parroting S.S.'s threat to bring him to his knees and threatening to contact police, immigration officials and S.S's husband.

S.S claimed to have given birth to a boy in Iran in October of 2003. She continued to call Mr. Robinson and to demand his identifying information in order to get the supposed baby out of Iran.

In early 2004, Mr. Robinson obtained a Temporary Restraining Order against S.S.

Mr. Robinson's supervisor, Julie Salcedo, was fully aware of the problem. In late February, she signed an administrative subpoena for telephone records of Mr. Robinson and a third party, in order to document S.S.'s harassing telephone calls. The subpoena stated that the records were being sought in connection with an "investigation" that was "necessary and incidental" to the enforcement of Export regulations.

S.S was served with the Temporary Restraining Order in late February of 2004. In apparent retaliation for the restraining order, S.S. complained to OEE about Mr. Robinson, accusing him of

extortion, rape, "black male," (presumably, blackmail) and of threatening to kill her and her family. The matter was assigned to agents John Wanat and John McKenna for an administrative investigation.

S.S. withdrew all her allegations against Mr. Robinson barely one month after she made them. This was confirmed by a letter from S.S.'s attorney to McKenna.

In November of 2004, Wanat and McKenna produced a report that emphasized the "allegations" made by S.S. and "focused" upon Mr. Robinson's use of the TECS database. The report is remarkable in that it includes every potentially inculpatory allegation and item of evidence against Mr. Robinson, but systematically excludes every item of exculpatory evidence.

Thus, for example, the report includes a verbatim transcript of Mr. Robinson's alleged threatening telephone message to S.S., but fails to even mention the fact that this message was merely a parroting of S.S.'s identical message to Mr. Robinson.

The report includes every written statement provided by S.S. to Wanat and McKenna in which she accused Mr. Robinson of extortion, rape and other felonies, but the report makes no mention of the fact that S.S. recanted all these accusations in writing.

The report suggests that Mr. Robinson "stalked" S.S., but fails to mention that, in fact, it was the other way around: S.S stalked Mr. Robinson. The report fails to mention that Mr. Robinson obtained a TRO, changed his telephone number, and was advised to carry a gun to protect himself from S.S.

The report suggests that Mr. Robinson's use of TECS was unauthorized, but fails to mention that his use of TECS was part of an "investigation" that was "necessary and incidental to the enforcement of the Export Administration regulations" or that Mr. Robinson's supervisor knew of, and actively participated in, this investigation

The defense investigation has disclosed that Wanat has a history of racial bias. He apparently has been found guilty of discrimination against African-Americans on at least one occasion. Mr. Robinson is African-American. After meeting with Wanat, Mr. Robinson's supervisor told Mr. Robinson that Wanat was out to get Mr. Robinson.

Moreover, the systematic suppression of evidence appears to be a pattern conduct on Wanat's part. Defendant's investigation thus far has indicated that, on at least one occasion, Wanat has "browbeaten" and "intimidated" Department of Commerce licensing officials in order to force those officials to withhold potentially exculpatory evidence. As a result, at least one person has suffered a conviction for conduct that may not have been illegal at the time.

Mr. Robinson was terminated from federal employment as a result of the Wanat/McKenna report. The investigator who conducted the criminal investigation in this matter also relied primarily on the Wanat/McKenna report.

The evidence at the Grand Jury hearing, it is believed, consisted primarily of a reading of the Wanat/McKenna report by the case agent. Thus, the grand jury was misled as to the law, the facts, and the credibility of the witnesses from whom the alleged facts were derived.

## PROCEDURAL HISTORY

Mr. Robinson was indicted by the Grand Jury on September 19, 2007. He is charged with two felony counts. Count one charges Mr. Robinson with making a false statement to a government agency in violation of 18 USC section 1001. This charge is based on Mr. Robinson's alleged statement to Wanat and McKenna to the effect that he had accessed the TECS database "approximately 10 to 15 times" in relation to S.S.

Count two charges Mr. Robinson with illegal access to a government database for a tortious or criminal purpose in violation of 18 USC section 1030(a)(2)(B) and (c)(2)(B)(ii). The alleged tortious or criminal purpose consists of "stalking" in violation of California Penal Code section 646.9.

Mr. Robinson has entered a plea of "not guilty" to the charges

## AUTHORITY / ANALYSIS

**I.  FEDERAL RULES OF CRIMINAL PROCEDURE 12(i), 16(a)(1)(A), 26.2, *GIGLIO v. UNITED STATES*, 405 U.S. 150, 92 S.Ct. 763 (1972) AND *BRADY v. MARYLAND*, 373 U.S. 83, 83 S.Ct. 1194 (1963) SECURE THE RIGHT OF THE DEFENDANT TO THE DISCLOSURE OF GRAND JURY TRANSCRIPTS.**

Although under Rule 6(e)(3)(E) of the Federal Rules of Criminal Procedure, a defendant is entitled to the disclosure of grand jury testimony only when he can show that a particularized need exists that outweighs the policy of grand jury secrecy, there are exceptions to that rule. *See Douglas Oil Co. v. Petrol Stops*, 441 U.S. 211, 217, 99 S.Ct. 1667, 1672 (1979); *Dennis v. United States*, 384 U.S. 855, 870, 86 S.Ct. 1840, 1849 (1966); *United States v. Plummer*, 941 F.2d 799, 806 (9th Cir. 1991). For example, grand jury statements of the defendant, all exculpatory and impeachment material, and grand jury statements of witnesses who testify at suppression hearings or at trial are all discoverable without requiring the defendant to show a particularized need. *See* Fed. R. Crim. P. 12(i), 16(a)(1)(A), 26.2; 18 U.S.C. § 3500; *Giglio v. United States*, 405 U.S. 150, 154, 92 S.Ct. 763, 766 (1972); *Brady v. Maryland*, 373 U.S. 83, 87, 83 S.Ct. 1194, 1197 (1963).

Grand jury testimony which falls within the scope of *Brady* and *Giglio* constitutes an exception to the general rule of grand jury secrecy. *See United States v. Bagley*, 473 U.S. 667, 676, 105 S.Ct. 3375,

3380 (1985); *Giglio*, 405 U.S. at 154, 92 S.Ct. at 766; *Brady*, 373 U.S. at 87, 83 S.Ct. at 1196-97; *United States v. McLaughlin*, 89 F.Supp. 2d 617 (E.D.Penn. 2000); *United States v. Salerno*, 796 F.Supp. 1099, 1108 (N.D.Ill. 1991). The nondisclosure of evidence which affects witness credibility or which is favorable to either guilt or punishment can require a new trial. *See Strickler v. Greene*, 527 U.S. 263, 119 S.Ct 1936 (1999).

Here, pursuant to *Brady* and *Giglio*, all exculpatory and impeachment material within the grand jury transcripts must be disclosed. In the present case, the credibility of witnesses is critical to the government's case. Count one, the charge of false statements to a government agency, depends entirely on upon the credibility of Wanat and McKenna. Count two, the charge that of using a government database for stalking, depends on the credibility of Wanat, McKenna and S.S. The government is in possession of substantial evidence that bears on the credibility of these witnesses. If that evidence was produced to the grand jury, defendant is entitled to it. If that evidence was not disclosed to the grand jury, the grand jury was misled and grounds exist for a motion to set aside the indictment. Either way, defendant is entitled to the transcript.

## II.   PURSUANT TO RULE 6(e) OF THE FEDERAL RULES OF CRIMINAL PROCEDURE, THE DEFENDANT IS ENTITLED TO DISCLOSURE OF THE GRAND JURY TRANSCRIPTS.

### A. Defendant's Need Outweighs The Concern For Grand Jury Secrecy

Under Federal Rule of Criminal Procedure 6(e)(3)(E)(i), the court may order disclosure of grand jury transcripts preliminarily to or in connection with a judicial proceeding. This rule reflects a "growing realization that disclosure, rather than suppression, of relevant materials ordinarily promotes the proper administration of criminal justice." *Dennis v. United States*, 384 U.S. at 870, 86 S.Ct. at 1849. This notion is especially compelling in the case of a criminal defendant seeking discovery of grand jury testimony, as "it is rarely justifiable for the prosecution to have exclusive access to a storehouse of relevant fact." *Id*. at 873, 86 S.Ct. at 1851.

In *United States v. Mechanik*, 475 U.S. 66, 106 S.Ct. 938 (1986), the U.S. Supreme Court held that any grand jury abuse or prosecutorial misconduct concerning the grand jury is rendered harmless by a subsequent conviction of the defendant by the petit jury. *Mechanik*, 475 U.S. at 67. The Ninth Circuit has held that the *Mechanik* holding applies to virtually any claim of grand jury abuse. *United States v. Dederich*, 825 F.2d 1317 (9th Cir. 1987); *United States v. Benjamin*, 812 F.2d 548 (9th Cir. 1987). Thus, any matters concerning abuse of the grand jury process must be fully litigated pretrial.

The Supreme Court has established a three-part test to determine when a defendant has made a sufficient showing to obtain pretrial discovery of grand jury transcripts. *See Douglas Oil Co.*, 441 U.S.

at 222, 99 S.Ct. at 1675. A defendant must show that the material sought is needed to avoid a possible injustice in another judicial proceeding; that the need for disclosure is greater than the need for continued secrecy; and that the request is structured to cover only material which is needed. *See id.* Once a particularized need for the transcripts is shown and this need is found to outweigh the policy of grand jury secrecy, "the trial judge's function is reduced to eliminating only extraneous material or issuing protective orders in unusual situations." *United States v. Plummer*, 941 F.2d 799, 806 (9th Cir. 1991) (*citing Dennis*, 384 U.S. at 875, 86 S.Ct. at 1852). Once the presentment and indictment are found and made public, the defendant is in custody (or otherwise brought before the Court), and the grand jury is discharged, the importance of secrecy declines; as it does, so does the moving party's burden to meet this standard of particularity. *See id.* at 223; *see also United States v. Socony-Vacuum Oil Co.*, 310 U.S. 150, 234, 60 S.Ct. 811, 849 (1940) (*citing Metzler v. United States*, 64 F.2d 203, 206 (9th Cir. 1933)).

In *United States v. Evans & Associates Construction Co.*, 839 F.2d 656, 658-59 (10th Cir. 1988), *aff'd on reh'g*, 857 F.2d 720 (10th Cir. 1989), the court held that the defendant had met its burden of showing a particularized need for the grand jury transcripts. The government argued that, under the Jencks Act, the defendant was entitled to this only after each witness had testified, the court found that the setting of a time table for the disclosure of grand jury testimony is a matter within the trial court's discretion. *See id.* at 659 (quoting district court which had instructed government, "If you hand it to them in the trial, you know as well as I do that we are going to have to recess the trial a week.").

Here, the defendant's need for the transcript clearly outweighs the concern for grand jury secrecy. On the one hand, defendant's need is great: As detailed below, there appear to be substantial ground for a motion to set aside the indictment. If that motion were made and granted, defendant (as well as the prosecution and the Court) would be spared the time and expense of a felony jury trial, and defendant could avoid prosecution for charges that appear are unfounded.

On the other hand, the disclosure of the transcripts does not contravene the policy favoring grand jury secrecy. Defendant is already before the court. The prosecution made the findings of the grand jury public by a press release on the day the indictment was handed down. The prosecution intends to provide defendant with a copy of the transcript two weeks prior to trial in any event. And, Defendant is willing to enter into a protective order to limit the use of the transcript to that which is necessary to the defense motion.

-7-

**B. The Transcript Will Reveal That the Indictment Should Be Dismissed**

**1. The Indictment Should be Dismissed Because it Was Based Upon False Or Misleading Statements By The Prosecutor And/Or Case Agent**

Under Federal Rule of Criminal Procedure 6(e)(3)(E)(ii), the court may authorize disclosure of grand jury transcripts "at the request of the defendant who shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury." The defendant is required to make specific allegations in order to establish a particularized need for the transcript. *See United States v. Perez*, 67 F.3d 1371, 1381 (9th Cir. 1995), *rev'd on other grounds*, 116 F.3d 840 (9th Cir. 1997).

The Ninth Circuit has repeatedly approved the use of the district courts' supervisory power to dismiss an indictment for governmental misconduct. "[S]uch dismissal is used as a prophylactic tool for discouraging future deliberate governmental impropriety of a similar nature." *See United States v. Owen*, 580 F.2d 365, 367 (9th Cir. 1978) (and cases cited therein).

Governmental "misbehavior, even if unintentional, can cause improper influence and usurpation of the grand jury's role." *United States v. Samango*, 607 F.2d 877, 882 (9th Cir. 1979). This Court's inquiry focuses on whether the government's conduct was "a significant infringement on the grand jury's ability to exercise independent judgment." *Bank of Nova Scotia v. United States*, 487 U.S. 250, 108 S.Ct. 2369, 2376 (1988). Where dismissal is sought for non-constitutional error, such as governmental misconduct, "dismissal of the indictment is appropriate 'if it is established that the violation substantially influenced the grand jury's decision to indict,' or if there is 'grave doubt' that the decision to indict was free from the substantial influence of such violations." *Id.* at 256 (*citing Mechanik*, 475 U.S. at 78).

This inquiry is consonant with the Court's traditional goal "to protect the integrity of the judicial process, particularly the functions of the grand jury, from unfair or improper conduct. *United States v. Chanen*, 549 F.2d 1306, 1309 (9th Cir.) *cert. denied*, 434 U.S. 823 (1977). The court directs its inquiry toward the effect of any misinformation given the grand jury, not the prosecutorial conduct. *United States v. DeRosa*, 783 F.2d 1401, 1405 (9th Cir.), *cert. denied*, 477 U.S. 908 (1986).

If the prosecution not only failed to present exculpatory evidence to the grand jury, but also misled them into believing that no such evidence existed, then the prosecution has undermined the independence of the grand jury in making an informed determination of probable cause. *See United States v. Sears, Roebuck & Co., Inc.*, 719 F.2d 1386, 1392 (9th Cir. 1983).

Further, there is no question that a prosecutor's knowing use of false testimony under oath before a grand jury also is sufficient grounds for dismissal of an indictment. *United States. v. Kennedy*, 564

F.2d 1329, 1338 (9th Cir. 1977); *United States v. Basurto*, 497 F.2d 781, 785 (9th Cir. 1974). As one district court has noted,

> [T]he Supreme Court and other federal courts, including those in the Ninth Circuit, have been concerned on occasion with possible usurpation of the function of the Grand Jury by the prosecution. The fear is that a Grand Jury sufficiently controlled by the Government thus becomes a kind of "rubber stamp" for the wishes of the prosecutor. The Fifth Amendment Due Process clause of the Constitution guarantees citizens who are to be charged with serious crimes in the federal courts the right to have their cases screened by a Grand Jury of their fellow citizens before being put on trial. <u>If the presentation to the Grand Jury is done unfairly and essential information is withheld, the Grand Jury is thus unable to make a decision based on a fair assessment of the evidence.</u> Then the indictment in fact becomes the decision of the prosecutor and not of the Grand Jury, thereby causing fundamental unfairness and a violation of a defendant's constitutional rights.

*United States v. Isgro*, 751 F.Supp. 846, 850 (C.D.Cal. 1990) (emphasis supplied).

Here, the grand jury was misled as to the facts, the law and the credibility of the witnesses from whom the alleged "facts" were obtained. For example: The grand jury was led to believe that Mr. Robinson had engaged in an "unauthorized" use of TECS when, in fact, the government had in its possession documentary evidence that showed Mr. Robinson's use of TECS to be authorized.

The grand jury was led to believe that Mr. Robinson was stalking S.S and that he had threatened her, when, in fact, the government had in its possession evidence that showed that it was S.S whohad stalked and threatened Mr. Robinson.

The grand jury was not instructed that the one angry message left by Mr. Robinson was a response to S.S.'s threat, or that a single incident cannot, as a matter of law, constitute "stalking" or that constitutionally protected activity cannot form the basis of a stalking charge.

The grand jury was not properly instructed as to the meaning of "materiality" for purposes of 18 USC 1001. The grand jury was led to believe that Mr. Robinson's alleged statement that he accessed TECS "approximately 10 to 15 times" was an effort on Mr. Robinson's part to minimize his guilt, when, in fact, the statement was the most damning evidence against him in the administrative proceeding. The grand jury was led to believe that the exact number of times that Mr. Robinson had accessed TECS was "material" to the investigation. In fact, it made no difference whatsoever and the government was in possession of evidence that showed this to be the case.

The grand jury was led to believe that the source of the information, Agent Wanat, was credible and unbiased when, in fact, he had a history of racial bias and of withholding exculpatory evidence. Again, the government had evidence in its possession that showed this to be the case.

As pointed out, it makes no difference whether the government's actions in this regard were intentional or unintentional. The fact is that the grand jury was misled. It was precluded from making a decision based upon a "fair assessment of the evidence."

**2. The Transcript Will Reveal that the Indictment Should Be Dismissed Due To A Violation of Defendant's Due Process Right to Indictment by Grand Jury**.

A possible abuse of the grand jury process weighs heavily toward disclosure: the risk that a defendant's Fifth Amendment right to indictment by grand jury has been undermined is a grave one, and the grand jury serves "the dual function of determining if there is probable cause ... and of protecting citizens against unfounded criminal prosecution." *Branzberg v. Hayes*, 408 U.S. 665, 686-87, 92 S.Ct. 2664 (1972). At issue here, then, is not simply the defendant's rights, but the integrity of the grand jury process.

In the present case, the grand jury handed down an indictment that applied incorrectly stated law to misleading evidence derived from unreliable witnesses. The government had in its possession at the time of the hearing evidence that would have shown all the charges to be unfounded. It systematically excluded that evidence and, and in so doing, made otherwise justifiable and legal conduct appear to be criminal.

Had the grand jury known that Mr. Robinson's supervisor knew of, and actively participated in, an investigation of S.S., that S.S. had stalked and threatened Mr. Robinson and recanted her allegations against him, and that the person who compiled the evidence against Mr. Robinson was a bigot with a history of withholding evidence in order to gain a conviction, it undoubtedly would have reached a different decision. In short, the government, whether intentionally or unintentionally, usurped the grand jury's role and violated Mr. Robinson's Due Process right to an independent determination of the facts by his fellow citizens. There is, consequently, a basis for a motion to set aside the indictment.

## CONCLUSION

For the reasons stated, defendant's motion should be **GRANTED**.

Dated: December 4, 2007

        Respectfully submitted,

        /S/_____

        Dean E. Johnson
        Attorney for Defendant